# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **W.L., K.L., and G.L.**

**No. 25-450** (Mineral County CC-29-2023-JA-49, CC-29-2023-JA-50, and CC-29-2023-JA-51)

## MEMORANDUM DECISION

Petitioner Mother A.G.[1] appeals the Circuit Court of Mineral County's June 6, 2025, order terminating her parental rights to W.L., K.L., and G.L.,[2] arguing that the circuit court erred in terminating her rights and in denying her motion for post-termination visitation. Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In August 2023, the DHS filed a petition against the parents alleging educational neglect of W.L. and K.L. and drug abuse after G.L. tested positive for cocaine at birth. According to the DHS, the petitioner tested positive for cocaine and marijuana but denied any substance abuse and refused to submit for any additional tests. At an adjudicatory hearing in December 2023, the petitioner submitted written stipulations, admitting to educational neglect and "to drug use by a caretaker . . . , which ha[d] detrimentally affected the minor children and the [petitioner's] ability to care for the minor children." The circuit court adjudicated the children as neglected based on these stipulations and granted the petitioner a post-adjudicatory improvement period, the terms of which were incorporated from her family case plan and required her to participate in parenting and adult life skills classes, drug screens, substance abuse counseling, individual therapy, and supervised visits with the children. As part of her case plan, the petitioner acknowledged that she needed to "understand that it is her responsibility to provide safe housing and a drug-free environment" and one of her goals was to "learn skills needed to gain protective capacity and provide safety for her child[ren]." The circuit court later extended the petitioner's improvement period and granted her a post-dispositional improvement period, finding that she had "made progress on [her] case plan[] but need[ed] additional time to secure housing, employment, and sobriety."

---

[1] The petitioner appears by counsel Grant M. Sherman. The West Virginia Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Wyclif S. Farquharson. Counsel Madison B. Martin appears as the children's guardian ad litem ("guardian").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

The circuit court held a series of dispositional hearings, culminating in a final hearing in May 2025. The DHS presented testimony from a Child Protective Services ("CPS") worker, who testified that the petitioner had been consistently testing negative on her drug screens since November 2024, completed nearly all of her services, and substantially complied with her case plan. The case worker explained, however, that the DHS recommended terminating the petitioner's parental rights because she maintained a relationship and lived with the father, who inconsistently participated in services, frequently tested positive for alcohol and cocaine, and had not seen the children since October 2024. The petitioner testified that she had obtained employment, housing, and sobriety. The petitioner admitted that she listed the father on her apartment lease and continued residing with him. However, she claimed that she was not co-dependent on the father and would choose the children over her relationship with him. The petitioner further testified that her supervised visits with the children were increased, but she never received unsupervised or overnight visits.

After considering the evidence, the circuit court entered a dispositional order recognizing that the petitioner had made significant improvements, largely complied with services, participated in visits, and secured employment and stable housing. However, the court also found that, "despite the urgings of the [multidisciplinary team]," she had not demonstrated that she would separate herself from the father and that "the [c]ourt ha[d] no faith that she would remain away from him or keep him from the children if they were returned to her." The court explained that while the petitioner stated that she would choose the children over the father, she supported the father's contention that his drug screens were inaccurate, "failed to separate herself from him despite warnings that such failures could result in the termination of her parental rights," added him to her new lease, and continued residing with him, which prevented her from progressing to unsupervised and overnight visits. Thus, the court found that the petitioner could not correct the deficiencies that led to the children's removal in the near future. The court further found that termination of the petitioner's parental rights was in the children's best interests because of their ages and need for permanency. Accordingly, the circuit court terminated the petitioner's parental rights to the children.[3] The order noted that the court would address post-termination visitation at a permanent placement review hearing in July 2025.

At the permanency hearing, the petitioner moved for post-termination visitation with the children. The guardian recommended no post-termination visitation because the children reported to multiple individuals that they did not desire ongoing visitation with the petitioner. The DHS and the Court Appointed Special Advocate ("CASA") joined the guardian's recommendation. In response, the petitioner argued that she had ended her relationship with the father, substantially complied with her case plan, and obtained housing and employment. Ultimately, the court found that G.L. did not have a bond with the petitioner because she was an infant when removed from her custody. Despite recognizing that the petitioner shared a bond with W.L. and K.L., the court denied the petitioner's motion, finding that visitation would be detrimental to the children's wellbeing and against their best interests as such visitation would "be confusing to the children as they move towards permanency." The petitioner appeals from the dispositional order.

---

[3] The court also terminated the father's parental rights. The permanency plan for the children is adoption in their current placements.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's substantive rulings for abuse of discretion, factual findings are reviewed for clear error, and issues of law are reviewed de novo. Syl. Pt. 1, *In re K.S.*, -- W. Va. --, 930 S.E.2d 400- (2026). Before this Court, the petitioner first argues that the circuit court erred in terminating her parental rights because she demonstrated her ability and capacity to solve the problems of neglect by substantially complying with her case plan, achieving sobriety, and testifying that she would end her relationship with the father if required. We find the petitioner's argument unavailing. As we have explained, "it is possible for an individual to show 'compliance with specific aspects of the case plan' while failing 'to improve . . . [the] overall attitude and approach to parenting.'" *In re Jonathan Michael D.*, 194 W. Va. 20, 27, 459 S.E.2d 131, 138 (1995) (quoting *W. Va. Dep't of Human Serv. v. Peggy F.*, 184 W. Va. 60, 64, 399 S.E.2d 460, 464 (1990)). Although the petitioner complied with services, she clearly made no improvement in her overall ability to appropriately parent the children and provide them with a drug-free environment. Indeed, the record shows that despite the father's continued drug use, more than a year of services, and urgings of the multidisciplinary team, the petitioner chose to add the father to her lease and allowed him to reside in her home. Furthermore, the petitioner's decision to remain in a relationship with the father prevented her from progressing to unsupervised and overnight visits with the children. Thus, the record supports the circuit court's findings that there was no reasonable likelihood the conditions of abuse or neglect could be substantially corrected in the future as she "demonstrated an inadequate capacity to solve the problems of abuse or neglect on her own or with help." W. Va. Code § 49-4-604(d) (defining "[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected"). Moreover, the court correctly found that termination of the petitioner's parental rights was in the children's best interest so that they may achieve permanency. Termination of parental rights is appropriate upon such findings. *See* W. Va. Code § 49-4-604(c)(6) (permitting termination of rights upon finding "that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and, when necessary for the welfare of the child").

Lastly, the petitioner argues that the circuit court erred in denying post-termination visitation because she and the children "have a strong, close, emotional bond, and ongoing post-termination visitation between the Petitioner and minor children, would not be contrary to the best interest of the minor children." We disagree. Pursuant to recently amended Rule 15(b)(2)(A) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings,

> The [circuit] court may grant post-termination visitation only if it finds that such visitation is in the child's best interests, taking into consideration:
> i. The guardian ad litem's oral or written recommendation on whether post-termination visitation is in the child's best interests,
> ii. If the child is of sufficient age or maturity, whether the child wishes to have visitation; and
> iii. Any other relevant evidence, including, but not limited to, the nature of the abuse and/or neglect that prompted termination of rights and the existence of a bond.

The record shows that the circuit court acknowledged that there was a bond between the petitioner and W.L. and G.L. In reaching its decision on post-termination visitation, the court considered their bond along with the children's wishes and the recommendations of the guardian, the DHS, and the CASA representative, all of whom opined that visitation was not in the children's best interest. The circuit court was free to accord appropriate weight to each, and we refuse to disturb these determinations on appeal. *See State v. Guthrie*, 194 W. Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995) ("An appellate court may not . . . weigh evidence as that is the exclusive function and task of the trier of fact."). Contrary to the petitioner's arguments, the record supports the court's determination, particularly given that the children told multiple individuals that they did not want any continued contact with the petitioner. Accordingly, we find no error in the court's denial of post-termination visitation.

For the foregoing reasons, the circuit court's June 6, 2025, order is hereby affirmed.

Affirmed.

**ISSUED:** July 28, 2026

**CONCURRED IN BY:**

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice H. L. Kirkpatrick
Justice James W. Flanigan